UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERTHA JOHNSON,

                Plaintiff,

        v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

DECISION & ORDER

15-CV-6078P

**PRELIMINARY STATEMENT**

        Plaintiff Bertha Johnson ("Johnson") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI").[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 5).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Johnson also applied for Disability Insurance Benefits ("DIB"), but she amended her alleged onset date during her administrative hearing, effectively waiving her DIB claim. (Tr. 39).

## BACKGROUND

### I.     Procedural Background

Johnson applied for SSI and DIB alleging disability beginning on September 20, 2010, due to uncontrolled diabetes, back and leg pain, anxiety, high blood pressure, neuropathy in arms, fibromyalgia, and arthritis in her back. (Tr. 40, 166, 171).[2]  On February 8, 2011, the Social Security Administration denied both of Johnson's claims for benefits, finding that she was not disabled. (Tr. 83-84). Johnson requested and was granted a hearing before Administrative Law Judge Bruce S. Fein (the "ALJ"). (Tr. 92, 114-24). The ALJ conducted a hearing on April 20, 2012. (Tr. 32-75). In a decision dated October 1, 2012, the ALJ found that Johnson was not disabled and was not entitled to benefits. (Tr. 13-31).

On January 12, 2015, the Appeals Council denied Johnson's request for review of the ALJ's decision. (Tr. 1-7). Johnson commenced this action on February 10, 2015 seeking review of the Commissioner's decision. (Docket # 1).

### II.    Relevant Medical Evidence[3]

Treatment records indicate that Johnson began receiving primary care treatment from Maygoe Richard Sheehan ("Sheehan"), M.D., on September 13, 2011, and was still treating with him at the time of the administrative hearing in April 2012. (Tr. 36-37, 551, 573). Prior to treating with Sheehan, Johnson received primary care treatment from Sam Thompson ("Thompson"), M.D., between April 5, 2011 and July 26, 2011, and from Paulette Lewis ("Lewis"), M.D., between August 2008 and October 2010. (Tr. 36-37, 261-355, 519-49). Treatment notes demonstrate that Sheehan treated Johnson for a variety of complaints, including

---

[2] The administrative transcript shall be referred to as "Tr. __."

[3] Those portions of the treatment records that are relevant to this decision are recounted herein.

sinus congestion, leg pain and swelling, hand pain, diabetes, congestive heart failure, gastroparesis, hypertension, hypercholesterolemia, low back pain, proteinuria, and pneumonia. (Tr. 550-75).

On April 19, 2012, Sheehan completed a questionnaire relating to Johnson. (Tr. 462-64, 651-54). Sheehan reported that he had been treating Johnson since September 9, 2011. (*Id.*). According to Sheehan, Johnson would require one ten-minute rest period per hour or less during an eight-hour workday. (*Id.*). He also opined that she might be expected to be absent from work more than four days each month due to her chronic back pain. (*Id.*). Sheehan opined that Johnson could sit for less than six hours of an eight-hour workday and would require the freedom to alternate between sitting and standing. (*Id.*). He also opined that she was able to stand or walk for at least two hours of an eight-hour workday. (*Id.*). He further opined that she could lift approximately five pounds for three to eight hours per day and could lift more than five pounds up to three hours per day. (*Id.*). According to Sheehan, Johnson's concentration would not be impaired by her medical conditions, although her ability to sustain work pace would be mildly impaired, creating less than a twenty percent diminishment in her ability to sustain work pace. (*Id.*). Sheehan indicated that two of Johnson's medications, Lyrica and Percocet, could cause fatigue. (*Id.*).

## DISCUSSION

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

A. **<u>The ALJ's Decision</u>**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 16-26). Under step one of the process, the ALJ found that Johnson has not engaged in substantial gainful activity since September 20, 2010, the alleged onset date. (Tr. 18). At step two, the ALJ concluded that Johnson has the severe impairments of diabetes mellitus with slight neuropathy of the feet, bilateral carpal tunnel syndrome, and degenerative disc disease of the cervical spine. (*Id.*). At step three, the ALJ determined that Johnson does not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (Tr. 21-22). The ALJ concluded that Johnson has the Residual Functional Capacity ("RFC") to perform light work, including the ability to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand and walk for six hours of an eight-hour workday. (*Id.*). He further concluded that she was able to occasionally engage in postural activities, frequently use her left upper extremity to reach in all directions, frequently handle, finger and feel with her hands bilaterally, and has no limitation in her ability to reach overhead with her right upper extremity. (Tr. 22). With respect to her mental capacity, the ALJ concluded that Johnson did not suffer from any significant limitations in her ability to understand, carry out and remember simple instructions, respond appropriately to supervision, coworkers and usual situations, and deal with changes in a routine work setting. (*Id.*). At steps four and five, the ALJ determined that Johnson had no relevant prior work, but that based upon her age, education, work experience and RFC, Johnson was not disabled pursuant to application of the Medical Vocational Guidelines (the "Grid"), specifically, Grid Rules 202.17 and 202.10, 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 25-26).

B.      **Johnson's Contentions**

Johnson contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 9-1).  First, Johnson maintains that the ALJ's RFC assessment is not based upon substantial evidence because he erred in evaluating the opinion evidence contained in the record.  (*Id.* at 9-14).  According to Johnson, the ALJ mistakenly concluded that she did not have a treating relationship with Sheehan, causing him to improperly discount Sheehan's opinion.  (*Id.*).  Additionally, Johnson maintains, the ALJ improperly rejected the consulting physician's opinion that she suffered from moderate limitations in her ability to lift, carry, push and pull objects.  (*Id.*).  Next, Johnson challenges the ALJ's assessment of her ability to reach, handle, finger and feel on the grounds that it was not supported by any medical opinion of record.  (*Id.* at 14-16).  Additionally, Johnson maintains that the ALJ failed to account for limitations caused by her fatigue and congestive heart failure.  (*Id.* at 17-18).  Next, Johnson maintains that the ALJ erred by failing to consider all of the limitations caused by her diabetes, including neuropathy of the arms and legs, and chronic joint pain and swelling.  (*Id.* at 19-20).  Finally, Johnson contends that the ALJ erred by failing to consult a vocational expert.  (*Id.* at 20-22).

II.     **Analysis**

I turn first to Johnson's contention that the ALJ's RFC assessment was flawed because the ALJ improperly discounted Sheehan's opinion.  (*Id.* at 9-14).  Specifically, the ALJ stated:

> I have given little weight to Dr. Sheehan's assessment pursuant to
> either SSR 96-2p or SSR 06-3p.  I have looked through the
> treatment notes and find no evidence that the claimant has been
> examined by Dr. Richard Sheehan (Exhibits B2F, B3F, B14F,

7

>B16F, B17F and B18F). The claimant has seen Maygoe Sheehan, M.D., however. Moreover, there is no indication that Dr. R. Sheehan reviewed the medical records prior to completing this assessment. In addition, Dr. Sheehan's opinion cites to back pain in support of the assessment, and the claimant's complaints of low back discomfort are not supported by an underlying musculoskeletal impairment on imaging. Based on lack of evidence showing a longitudinal relationship between the claimant and Dr. Sheehan, the lack of positive clinical findings in the medical evidence and the claimant's poor credibility, I have given little weight to Dr. R. Sheehan's assessment.

(Tr. 24).

The parties agree that the ALJ erred in concluding that the record did not demonstrate a treating relationship between Sheehan and Johnson. (Docket ## 9-1 at 3, 9-10; 10-1 at 25). As both parties recognize, the ALJ's decision suggests that the ALJ did not appreciate that Maygoe Sheehan and Richard Sheehan were the same physician. (*Id.*).

The parties disagree as to the significance of this mistake. Johnson maintains that it is impossible to determine whether the ALJ would have weighed Sheehan's opinion differently had he appreciated that Sheehan had provided primary care treatment to Johnson for approximately seven months prior to rendering his opinion. (Docket # 9-1 at 9-10). The government counters that although the ALJ was mistaken, the mistake was ultimately harmless because the ALJ provided other good reasons for discounting Sheehan's opinion. (Docket # 10-1 at 25-26).

Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) ("the ALJ [must] give controlling weight to the opinion of the treating

8

physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

> (1) the frequency of examination and length, nature, and extent of the treatment relationship,
>
> (2) the evidence in support of the physician's opinion,
>
> (3) the consistency of the opinion with the record as a whole,
>
> (4) whether the opinion is from a specialist, and
>
> (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)).

In his decision, the ALJ explained that he discounted Sheehan's opinion, in part, because the record failed to demonstrate "a longitudinal relationship between the claimant and Dr. Sheehan." (Tr. 24). Johnson maintains that this mistake so infected the ALJ's decision of the weight to accord to Sheehan that it is impossible to determine whether the ALJ, had he

9

appreciated his mistake, would have given controlling weight to Sheehan's opinion.  I agree.  The ALJ explicitly accorded little weight to Sheehan's opinion primarily because he did not believe that Sheehan had an established treating relationship with Johnson and because there was nothing in the record to suggest that Sheehan had reviewed Johnson's medical records.  This was error requiring remand.  *See Stiggins v. Barnhart*, 277 F. Supp. 2d 239, 244 (W.D.N.Y. 2003) (remand appropriate where ALJ mistakenly believed that two different treating physicians were the same physician and discounted both treating physicians on the erroneous grounds that they had not recently treated the claimant when one of the physicians in fact had provided recent treatment).

        Despite acknowledging the ALJ's mistaken belief that Sheehan did not have a treating relationship with Johnson, which is a very significant factor in evaluating the weight to accord a medical opinion, the government nonetheless maintains that this Court may ignore that error and presume that the ALJ would have accorded the same weight to Sheehan's opinion had he been aware of his mistake.  (Docket # 10-1 at 25-26).  I disagree with the government's assertion that the record in this case permits the Court to divine how the ALJ would have weighed Sheehan's opinion had he appreciated Sheehan's established relationship with Johnson.  *See Lopez v. Colvin*, 2014 WL 5410299, *15 (D.R.I. 2014) ("[w]hen an opinion is rejected based on a fundamental error . . . , even if other appropriate reasons are given, it is impossible for the Court to determine how much the error corrupted the ALJ's determination to ascribe a certain weight to the opinion") (collecting cases); *Hanes v. Comm'r of Soc. Sec.*, 2012 WL 4060759, *1, 14 (E.D.N.Y. 2012) (remanding for proper consideration of treating physician's opinion where ALJ was mistaken as to the frequency of treatment provided to claimant by physician; "[a] conclusion by this Court that the factual error in this case was harmless would simply be

speculation, and thus, remand is warranted to ensure that the ALJ fully considers this overlooked medical information in light of the entire record pursuant to the treating physician rule, and thoroughly applies the requisite factors to decide how much weight to give [the treating physician's] opinion"); *see also Parrish v. Colvin*, 2014 WL 412558, *13 (E.D. Va. 2014) (remanding where ALJ mistakenly concluded that physician did not provide treatment to claimant during the relevant period; "[o]ther courts reviewing similar errors by ALJ's regarding treating physicians have also refused to find such errors to be harmless") (collecting cases). Accordingly, I conclude that remand is appropriate to permit the ALJ to determine the appropriate weight to accord Sheehan's opinion, given his conceded treating relationship with Johnson.

In evaluating Sheehan's opinion, the ALJ should consider not only Sheehan's treating relationship with Johnson, but also the other relevant factors, and the record as a whole. Because reevaluation of the weight to be assigned to Sheehan's opinion could affect the ALJ's RFC assessment and the rest of the sequential evaluation process, I do not reach Johnson's remaining contentions. *Norman v. Astrue*, 912 F. Supp. 2d 33, 86 (S.D.N.Y. 2012) ("[b]ecause I find legal error requiring remand, I do not reach the issue of whether the ALJ's decision was supported by substantial evidence").

On remand, the ALJ should explain his conclusion, if he believes it is still supported upon reevaluation of all relevant factors, that Sheehan's opinion should be discounted because Sheehan assessed limitations relating to Johnson's back pain. (Tr. 24). According to the ALJ, the medical records do not support any underlying musculoskeletal impairment of the low back. (*Id.*). The parties dispute whether there is evidence in the record to support medical impairments that could explain Johnson's complaints of low back pain. (Docket ## 9-1 at 10,

12; 10-1 at 26). For this Court's purposes, however, that dispute is irrelevant because the only limitation assessed by Sheehan that refers to back pain is his assessment that Johnson might be absent more than four days per month due to her "chronic back pain." (Tr. 462). Sheehan's opinion does not make clear whether he is referring to Johnson's low back pain or pain she suffered due to the degenerative disc disease of her cervical spine, a medical impairment which the ALJ found to be severe at step two. In any event, nothing in the remainder of Sheehan's opinion suggests that the other limitations he assessed were related to Johnson's complaints of low back pain, as opposed to any of the other severe medical impairments from which Johnson suffers. Thus, on remand, the ALJ should consider re-contacting Sheehan for clarification regarding whether he was relying upon Johnson's complaints of low back pain, and if so, which of the assessed limitations are associated with her alleged low back pain.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Johnson's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                  *s/Marian W. Payson*
                                                  MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
         July 21, 2016